May it please the Court, I'm David Schoen, representing Mr. Sarvis, the appellant in this case, and I very much appreciate the opportunity to be here. As the Court is aware, Mr. Sarvis filed his briefs in the case pro se, and then when the Court was kind enough to grant him oral argument, I agreed on a pro bono basis to at least argue the case orally as a member of the Court. We're here, of course, at issue is Statute 24.2-613. It's a ballot ordering case. As the Court is aware, the statute provides that when I'm calling, the major parties go first and then the minor parties and then the independents. We're not asking the Court here today to decide whether that's a constitutional ballot ordering process or not. The primary focus here is we believe respectfully that it was an error to decide this case under 12b-6 motion. I cited in a recent 28J letter the familiar standard for this Court, and there's some recent cases. One of the cases I cited happens to be that Judges Agee and Wilkinson wrote on. That's this SD3 case, but the standard is well known, and the problem Could you proffer what you think or hope or suspect or surmise? I mean, you can guess as much as you want. What would discovery produce here that bears on the fundamental legal question? Important question. It's the heart of it in some sense, Your Honor. In other words, if we were to go back there, what would you be looking for? Well, what would you be looking for? Yes, Your Honor, what would I be looking for? The cases are very clear, I think, under Anderson. Anderson really sets that framework. So then here's where I'd like to go with that. What Anderson tells us is, and it's still the viable test that Anderson-Burdick is the viable test. The courts say apply to this kind of setting. That's this Tennessee Hargett case, as Anderson-Burdick applies. And what that tells us is we have to analyze all of these kinds of cases that restrict or potentially restrict or are at least facially discriminatory against a party or a minor party or an independent, voters' rights and candidates' rights. We have to look at them on a case-by-case basis. We can't use a litmus test. Well, it was good enough here, so it would be good enough there. So Anderson tells us let's look at the character and the magnitude of the injury, then the state's interest. And the state must justify their interest. I'm sorry to interrupt, but I'm asking you factually what would your interrogatories, requests for admissions, depositions produce factually to give meaning to the legal issue? I follow, Your Honor. Here's exactly how it would go. I only laid out Anderson because Anderson tells us we have to look at the interest and at the burden. Our discovery and the evidence that has to be put forward in these cases, as the court in Hargett said and all of the line of cases we discussed starting in 1930 was a fact question, 2015 is a fact question, we look first at the state's interest. And the state has three articulate . . . Wait a minute, wait a minute. Judge Davis asked a question, and I'd like to know the answer to it, too. What evidence would you proffer to the court? And I'll preface that by saying the district court asked you for that or asked whoever was trying this case. And you identified, the counsel identified, an expert. And, of course, the court said, well, I'd like to know what you're going to proffer in discovery that this expert is going to show so that there's some material issue of genuine fact that prohibits the entry of a 12b-6. So the question was asked, does he say what the extent of that bias is? Does he say that? Are you proffering what he would say? Counsel's answer, no, sir, I'm not. The court says, so we won't testify as a percentage. He just talks about the fact that there is some bias. And counsel says, yes, a significant bias, but I won't give you a number. I mean, it seems like to me you were asked specifically to proffer that evidence, and you came up with zero. First of all, Your Honor, if I may, I'm sorry, was Your Honor finished? Fire away. First of all, that was not the appropriate stage. In a 12b-6 stage, we're not required to put forward or make a proffer. The court can ask you at that stage, proffer what you're going to do in discovery. Tell me why we need to do discovery, and you've got to give them an answer. Absolutely, Your Honor. But the court makes findings based on an inability to confront the State's interest. So the court asked, what would we put on evidence about? What would we take discovery? We would take discovery about their specific interests. How is it that this reduces voter confusion? For example, that's one of their claims. And aren't there other means to reduce voter confusion that are less intrusive on the voters and on the candidate's rights? One of the interests they have, for example, is favoring candidates with demonstrated public support. And they think, under Timmons, they have license to do that sort of thing, almost carte blanche, it seems. Well, that's exactly a prohibited reason, if you follow Justice Stevens' opinion in the Klingman case. So we would put on evidence, first of all, about the history in the State, as to whether top-listed candidates always prevail in the election. So that regardless of what the percentages break down to, is that a fundamentally unfair advantage? Let me say this, Judge. There's a case called Lux v. Judd. Your Honor was on that panel for it. And in that case, it was clear. It was a case about whether you had to live in the district to be a witness to ballot access signatures. An intervening case came along, and by the way, the court threw the case out on a motion to dismiss, saying that the law is clear. The district court threw it out on a motion to dismiss. The law is clear that you have to live in the district, and here are the proffered reasons why. There was an intervening decision, and so this court said, well, it seems there's been an intervening decision, but we're still going to remand it for fact-finding on what their reason is for requiring in-district signature petitions. So the law seemed clear, but they still remanded it for fact-finding, because, as every single court has said, ultimately it is a fact question as to whether, first of all, as to how great an advantage there is in top-listing on the ballot and how great a disadvantage there is in being relegated always to not being top. Now, the Commonwealth says, well, they're not relegated always to the top. They just have to get to 10%, and then they can be a regular political party like the Democrats and the Republicans. Well, we would put on evidence about the history, about the cumulative barriers to gaining that kind of position. Well, most of the controversial cases in this area have to do with voter identification laws and things that actually could keep people from voting or keep people off the ballot. But the thing about the Virginia statute is it certainly doesn't prevent anybody from voting. It doesn't keep any citizen of Virginia from the ballot box. And it doesn't really, a lot of these statutes, prohibit minor parties altogether who haven't achieved a certain modicum of support, or they prohibit write-in candidates, or there are outright prohibitions. But the Virginia statute says the ballot is open to all, but you can't just waltz on to the top tier of the ballot without some basic showing of a modicum of support. Now, as I understand the Supreme Court cases, is that the states wanting to demonstrate a modicum of support for, if not, ballot access or ballot placement, is a perfectly legitimate sort of interest, that the ballot is not simply a free good for anybody. Otherwise, you have long lists that can be quite confusing to people, and at a minimum, lead to these long election lines in voting where some people don't even get to vote because the polls close. And Virginia tries to introduce some order to the process to make a simple statement, yeah, we'll let you on the ballot, but your placement, go out and earn it. That's pretty standard stuff. Your Honor, with all due respect, it's not standard stuff. There are other states that require it. But if the Court's point is the cases clearly allow states to require a modicum of support, absolutely no argument about that. Virginia places very high barriers to get on the ballot relative to other states. Not really, because all you have to do is get 10% for any one of the three statewide offices for governor, lieutenant governor, attorney general, or United States senator. And let's say you get 2% for governor or attorney general, but some small percentage of Virginians like your candidate for lieutenant governor. Well, that's enough. You can get on the ballot with that. Judge, respectfully, it's an onerous burden relative to other states, and the courts have found that to be the case. We can look at 5% cases. We can look at 1% cases. But the point is there's no evidence here either way. There's no evidence about how onerous all of the cumulative ballot access and ballot placement regulations are, and there's no evidence whatsoever that supports any of these interests. Now, the state says, the Commonwealth says, they don't have to support these interests, and that's simply not the case. That principle has been reaffirmed over and over. Recently, it's 2014 in Georgia, Green Party v. Kemp, the Bergland case. All of the cases say it's not just enough to articulate these interests. But, Judge, again, we know that the 8th Circuit has found this sort of thing to be, frankly, unconstitutional. We know that the 6th Circuit has written this kind of ballot ordering scheme. The Commonwealth would draw a distinction between incumbent first. I'm talking about the McLean v. Meyer case cited in the brief. There's no material difference for these purposes between incumbent first, meaning actually the Republican, because the Republican won last time, or the major parties first. Well, there is a difference, Counsel, because that's obviously favoring the existing office holder. This is very different. This is open to any of the political candidates or political parties, including independents. That's not what the experts would say, Judge. The experts would say that by putting these two major parties who... You can get experts to say anything you want. Well, that's exactly the point. That's will. That's exactly the point that... You had the opportunity to have an expert tell the Court, this is why this is a big deal in this case, because it's not just a matter of five votes that would be at stake, but 5,000 votes or 50,000 votes, and that's why this is a big deal. Respectfully, Your Honor, we didn't have that opportunity. That's exactly the opportunity we didn't have. Wait a minute. We had the opportunity to answer that... Wait a minute, Counsel. I'm looking at page 198 from the joint appendix, and that's what I read to you, and that's what the Court asked, and whoever the Counsel was at that time said they could not provide that evidence. They couldn't even make a proffer. Didn't make a proffer as to what the absolute percentage would be. It's one question within this whole universe of facts and discovery that must be adduced. There's a reason that every one of these cases says this is a fact question. Since 1930 through 2015, these are all facts because we're implicating fundamental rights of both the voters and the candidates. But there still remains the question with which this oral argument began, and that is normally a proffer would proffer with some specificity exactly what percentage or exactly what actual difference it made. You'd proffer the ultimate conclusion with some specificity, and then you'd have the supporting data set forth with some specificity. But that wasn't done. The question, Your Honor, went to one small aspect of this. The Court asked me earlier what facts, what factors we would want to put on evidence and take discovery on. It's the whole panoply of both the State's interests and the injury. All of that kind of evidence has to be put before the Court. That's exactly what the Sixth Circuit has emphasized. That's what the Eighth Circuit has emphasized. And that's what all of the district court cases that we cited and state court cases have emphasized. It is a fact question. And even in some of the cases that go the other way, it's because facts were developed, sufficient facts were developed. The problem here is, as the Court said in the Sixth Circuit and elsewhere, in some of these cases, by the way, it's after a trial, not just discovery. But what the Sixth Circuit said is, this is a fundamental fact question. It is the quintessential kind of case that cannot be decided on summary judgment even, let alone a motion to dismiss. But you've just absolved yourself of any obligation to define the parameters of the fact question or what exactly the fact question is. You just keep repeating, this is a fact question. This is a fact question. It was a fact question. But the district court asked you, well, what kind of facts? And it came up empty. Judge, I have said, with all due respect, what kinds of facts? Facts regarding, historically, how big a factor has ballot placement been in Virginia? In this case, as a case-by-case basis, that's what Anderson and Burdick requires. What is the magnitude of that injury? The state's interest. Is there a legitimate state interest or an important state interest in reducing voter confusion? Because the state, for example, points you to this Schaeffer case. That Schaeffer case would undermine the very interest that the state put forward here. All right, all right. You've reserved some time for rebuttal. We appreciate your argument, and we'll hear from you again. Thank you, Your Honor. Mr. Raphael. May it please the Court, Stuart Raphael for the Virginia State Board of Elections. Article I, Section 4 of the Constitution grants the states the power to determine the time, place, and manner of holding elections for the House and the Senate. And using that authority, states have come up with any manner, a number of different approaches. Six use an alphabetical listing. Twenty-two, including Virginia, use some form of tiered ballot structure. May I? I'm sorry to interrupt. Is Mr. Sarvis on the ballot this fall? I don't know. Isn't that necessary for standing in this case? I think the Court should ask Mr. Schoen whether he plans to run. There was an amended complaint filed in order to establish that there was not mootness, and Mr. Sarvis pleaded in the amended complaint that he was going to run in 2016 for national office. Has the deadline passed yet? No, I believe it's June 14th. I see. So it would be a good question to ask Mr. Schoen on his rebuttal. The deadline is what? I believe it's June 14th to file a petition with the signatures. So 22 states, including Virginia, the plurality of states use a tiered ordering approach. Twenty states use a random or rotational approach, and that's what Mr. Sarvis asked for in his complaint here. Under his theory, any of the 30 states that don't use a random or rotational approach are violating the Constitution. But the Constitution doesn't micromanage how states design their ballots, and for that reason the Court should affirm the district court's ruling. I want to point to three important concessions by Mr. Sarvis's counsel in the district court. The first is that he conceded that the burden on his electoral interest here is not severe and three times conceded that strict scrutiny does not apply. Secondly, he abandoned any facial challenge to the statute, so it's purely an as-applied challenge. That's at page 146 of the Joint Appendix. And there were, I think, four or five, maybe six plaintiffs in the trial court, including the Libertarian Party. The only one to appeal is Mr. Sarvis, so his claim is a very narrow as-applied challenge. And of course... The as-applied challenge here would seem that, you know, even though facial challenges are disfavored, it would seem to me that that would be the logical way to attack the law, just on its face, bring in other candidates and the rest rather than narrowing your case to an as-applied challenge because most of these cases go after the law facially. It's a fair point. He did abandon the facial challenge, but I think the problem with it... What I'm saying is when you read these voting rights cases, most of them go... You know, they don't just say as-applied to me. They just say this law generally. Right, and I think what makes it harder for this type of claim is that it is race-specific, candidate race-specific. The complaint cited one authority in support of the positional bias argument as a USC student law review note, and they quoted a piece of it. When you read that note, what it says is, gee, there was no positional bias in the gubernatorial elections in California, but there was some bias in the down-ballot races, right? It varies based on the race you're talking about. There's not going to be a lot of bias, if any, in the presidential race or in the Senate race. Sarvis is running for Senate. There might be some bias in the down-ballot races where people don't know the candidates and aren't informed, and I think that's why this type of claim fits an as-applied challenge better than it does a facial challenge. Are we talking about the last gubernatorial race? Senate. Yeah, he ran for Senate in 2014. He got 2.4% of the vote, which was 45 points behind the second-place finisher, Mr. Gillespie. He got 48% of the vote. Well, that's the impact of the party, because he's not here as a member of the party, right? He's here as applied to him as a candidate. That's exactly right. I'm wondering if we have jurisdiction in this case. Well, I think the mootness issue is a fair question. If he says, I'm not running again, I think... What about redressability? If all he's bringing is an as-applied challenge, but not on behalf of the party, how does he move up? I hate to make Mr. Schoen's argument for him, but I think what he would say is even if he doesn't run as a libertarian, he could still run as an independent, and then he's in the third-tier position. So he's still going to be complaining about positional bias. But our point is that... And so the harm is the opportunity to move up, not actually moving up. Right, and it's a kind of an odd... It's awfully hypothetical. It is, and it's kind of an odd claim, because really what the claim is saying is there are a lot of people out there who aren't informed, and so they'll just pick the first person. And when you think about, is that an associational rights claim? It reminds me of the Clingman case. That was the one involving the Oklahoma statute that said that independents could vote in a party's primary, but other party members could not. And so the libertarians said, we want independents and we want Democrats and Republicans to vote. I thought Sarvaj ran both for governor in 2013 and for Senate in 2014. That's correct. In both races. That's correct. Which one is he complaining about, or is it all of the above? Well, he's pointing to the previous ones. What he said in the amended complaint is he's going to run for national office in 2016, which I assume is House of Representatives, since there's not a Senate race in 2016. So I do think there's an issue there. What he's talking about here is the denial of opportunity, and he says, oh, look, I've run in the past, that's sort of the reason I'm going to run in the future, and whether I run as an independent candidate or whether I run as a candidate of a minor political party, this law denies me an opportunity. I think that's what he'd say. But that gets me to the third concession that his lawyer made in the district court, which, as Judge Agee pointed out, the lawyer was asked, what would this expert who you've identified say about the degree of positional bias? And he said he's not going to give a percentage. And I think that was – I stood up in the oral argument in the district court and I said that is fatal to his claim, because now all he's got is this subjective notion that it is better to be in a first place position. That is not enough to overcome the presumption of constitutionality of the statute. Moreover, when you look at all of these positional bias claims and the amount of positional bias that's been alleged, the biggest number you'll find is in Schaeffer v. Lamone, which this court affirmed with an unpublished opinion. That case involved a primary in Maryland with lots of candidates, and the plaintiff said, I think the bias is as high as 15 percent. And the district court said, we'll assume that's right. It still doesn't establish a severe burden on your associational rights, and there are lots of state reasons to support it. One of the things is really the place where the real clashes are coming in this whole area have to do, one, with voter ID laws and, two, with redistricting. I mean those redistricting and voter ID laws are probably the flashpoints in this whole area. But I would have thought that these sorts of ballot ordering laws were relatively uncontroversial, that unlike the two previous areas I mentioned, these fall within the state's competence to set goals for or to regulate the time and manner of election, unless there's a Voting Rights Act problem. And a Voting Rights Act problem hasn't been identified here, or the challenge hasn't been raised. And if you don't have a redistricting case and you don't have a voter ID thing and you don't have a Voting Rights Act problem and everything, then what you're left with is a ballot ordering function where there's wide variation among the states, and that part of it seems, you know, federalism can be a little messy. I mean this whole area is a joint federal-state responsibility where there's certain parameters a state can't exceed. But the states haven't been totally eclipsed in this area, particularly with something that begins more and more to resemble a housekeeping and efficiency argument rather than some sort of subversive attempt to undermine voter participation. That's exactly right, Judge Wilkinson, and it's actually more than that because the Constitution actually commits the power in the first instance to the states under Article I, Section 4. And as you say, there are different ways of structuring the ballot, and as long as it's a rational way and it doesn't severely burden some— You get the two major parties, lots of people support one, lots of people support the other, 98% of people in a presidential election. And there's no right to just waltz on to a top-tier position in a ballot without demonstrating some kind of public support. You just don't get to sort of say, oh, I'd like to be there and just sort of go there. That's right, and to your point, Judge Wilkinson, there are a number of other cases where the court found a modest burden that passed the rational basis standard where it was much more burdensome than what we're talking about here. A good example would be Storer v. Brown, which upheld the sore loser provision where you couldn't even run. You couldn't get on the ballot if you ran unsuccessfully for a different party in the year before. Or this court's decision in South Carolina Green Party was also a sore loser provision. Or the Timmons case where you couldn't run as a minor party candidate. I understand it because I don't see this as particularly onerous in the sense that if he gets 10% for his party, for governor, lieutenant governor, attorney general, or U.S. Senate, then he gets a prior position on the ballot not just for statewide office, but am I correct that it's also for federal office for the House of Representatives? Yes. And for general assembly offices as well? That's exactly right. Anyone who gets 10%. So you get 10% for one statewide office and then you get a bonanza in the sense that you're on the first tier of the ballot for the House of Representatives? That's right. And you get into the lottery. That's correct. For placement. That's exactly right. Is that the constitutional right, the privilege to get into a lottery? Because in order for there to be a burden, a constitutional burden, there has to be an existing constitutional right. And I guess this may be a simpleton's way to look at it. I have some trouble grasping what the constitutional right is, which I surmise is there's this supposed universe of voters who have taken the time and trouble to register. They aren't barred from the polls. They're in the voting booth and they're going to vote. And this surmises there's some unknown percentage of them that are too lazy or too dumb to know who to vote for, but they make a choice. And there's some right I'm not comprehending of a candidate to somehow appeal to this group. Right. I understand exactly where you're coming from. There is no right to be in the first place position on the ballot or to have a random listing on the ballot. I think the right that's at issue is there an impact on the right of association. And I want to come back to that Clingman case because that was the case where the Supreme Court upheld the Oklahoma statute that didn't allow Republicans or Democrats to cross over and vote for the Libertarian Party. And what the Supreme Court said in that opinion is if you're not willing to change parties, that associational right is really at its minimum. So for the Libertarians to say we want to associate with Republicans or Democrats, well, they don't want to associate with you was the answer. Now translate that to this case. Right. Here you've got people who don't even care enough to know who they're going to vote for, so they're going to vote for the first person listed. The associational claim here is even more attenuated than it was in Clingman. So given that it's a modest impact for all of the reasons you've said and given that they conceded that in the district court, then we just need some important governmental interest and we don't have to prove it. We just have to proffer it. And that's clear from the case law. And we offered three. Number one, finding your candidate quickly when you want to vote by party affiliation. You know they're in the top tier. You find them quickly. These particular governmental interests had met with approval at the Supreme Court in case after case after case, which was the basic right of a state to require some modicum of support. And we're not even talking about ballot access here. We're talking about ballot placement. Exactly. And the desire to have the voting lines move quickly. Yes. And these are not even party levers. People used to vote in many instances. As far as I know, they still may. You just pull a party lever, you know, and you vote all up and down the ticket. We're not even doing that. I mean that would be a real move in terms of efficiency, but Virginia hasn't gone that far. What it's saying is by having some sort of order to the ballot that translates through the different offices that are on the ballot, voters can be a little bit oriented. And that's a good thing because we all see, and it's a good thing for democracy that so many people are participating, but we all see these lines, these, you know, people waiting two and three hours for the right to vote. I admire them for wanting to exercise their franchise that passionately, but, you know, they may have other things to do. And then we get these controversies when the polls close because a lot of people come home from work and they're voting. The polls close at 7. They get off work at 5.30 or 6. They're coming. They face a long line. People say, well, you didn't get here on time. And, you know, and then we have a controversy over that. Now, one of the things you can do to mitigate it is to have there be a certain order so that the voters aren't spending time in every booth trying to figure out the whole schema. That's exactly right. And you touched on the first two state interests, finding your person quickly in the particular office, and then party order symmetry, that you know that your person's in the first or second place or third place position across the offices. The third interest, as you referenced, is the Timmons interest, that states are entitled to favor major parties unless they go too far. And, you know, Timmons was a case in saying you couldn't run as a fusion candidate. Here, we're not keeping any libertarian off the ballot. The question is simply where are you on the ballot. And to the extent that there is a benefit of being in the first tier, a state's entitled to favor the major parties because most people are going to vote for somebody in the major parties. They certainly did in Sarvis's case on this as-applied challenge. I do want to touch on the claim that you should have given us, he should have gotten discovery. Schaefer v. Limone, which this court affirmed, it was unpublished, but you affirmed the district court's ruling, that went out on a 12B6 motion where the court assumed that the positional bias was 15%. New Alliance Party, which we cited, that's the New York case, that went out on the state's cross motion on a 12B6 motion. Schaefer-Limone was a 12B6 motion as well. Pisano v. Stark, the last time the court had an Anderson verdict test in Judge Diaz's opinion for the court in that case, that went out on summary judgment. The issue was whether the May 15th petition deadline was too early. And the state in that case had an affidavit that said, we're worried about not having enough time if it's later than that. The plaintiff said, I want discovery to see if that's really true. And this court said, no, you don't get discovery on the state's interest. They just have to proffer an interest that's reasonable. Timmons is another great example. The state offered its reason at oral argument in the Supreme Court for how it could favor a party with demonstrated public support. That's very late in the process, and yet they weren't entitled, the plaintiff wasn't entitled to discovery there. Because we get these things litigated over and over again. I realize that this is an as-applied challenge, but I do think, because I don't like it when these things come up right on the eve of elections, and the Board of Elections are thrown into turmoil because these things come up in September or October or whatever. So some of these questions need to be settled. They need to be settled on the merits in advance of election so we don't get these eleventh-hour challenges. And, you know, there's not a member of the court who hasn't been sitting in some of these eleventh-hour challenges. And I think even though it's an as-applied challenge, these things need to be settled, some of them in May, so we don't have an October surprise with respect to an emergency motion. I agree with that 100%. If Schaefer v. Lamone had been a published opinion, I don't think we'd be here. They were challenging the alphabetical listing and they wanted a random listing, and the district court said there's no entitlement to that. Can I ask, just curious, the information that counsel alluded to about the outcome of past elections, isn't all of that in the public domain? It is. Or does your client have information that members of the public can't get? It is, and we actually asked the court to take judicial notice of the election results, and it did. Okay. So there's nothing that they can get from you? I mean, of course they could conduct a deposition if they wanted to, I suppose, but is there anything behind a locked door? I think there are two pieces of it. One is what would the positional bias be, and they said, we're not going to tell you, right? So they gave that up, and they did it at a time when you had to file your expert disclosures, right? So it was too late in the case for them to go back on that. The other one would be to interrogate our folks as to, is that really a good reason? And you can't do that. That's the whole point. You can't do that. I do want to touch on the Hargett case from the Sixth Circuit, which they hang their hat on. That case went up twice to the Sixth Circuit after the district court granted judgment for the plaintiff on the positional bias claim, saying the facts were in dispute. Tennessee never argued in that case. Under Timmons, it doesn't matter if we favor major parties. The case is now on cross motions for summary judgment back at the trial court. They have now made that argument based on service, right? And Timmons, I think they're going to win. And so the Hargett case is really an outlier, and you shouldn't follow it. Empirical evidence is not required. That's the holding in Timmons and Monroe. And I think the cases that the counsel sent the court over the weekend are just inapposite. They don't deal with what we have here. Bottom line, there's no right way to structure a ballot. The Constitution doesn't require random ordering. And because using a tiered structure is reasonable and is the most common method, the court should affirm. All right. Mr. Schoen, you have some rebuttal time. Yes, Your Honor. I have to conclude that we were both woefully weak in the briefs and in the oral argument because I'm baffled. We're missing an entire body of jurisprudence since 1930. There are at least 10 to 15 cases cited in the brief as to specifically why ballot ordering is a constitutional issue. I understand, Your Honor, and frankly, I say this only because I grew up in Virginia. This court has one of the greatest minds ever to sit in this court, so I have to think I am being woefully inadequate here. Again, the court asked what constitutional right is at issue. The Eighth Circuit in 1980 said, for example, such favoritism, ballot ordering, putting the incumbent or the major parties first, it says, burdens the fundamental right to vote possessed by supporters of the last listed candidates in violation of the 14th Amendment. That's the Eighth Circuit. There's no circuit that's gone otherwise. The Eighth and the Sixth are with us. And Timmons doesn't change any of that, nor does Monroe. Is Mr. Sarvis a candidate in 2016? He hopes to be. And he hopes to be a candidate for what? The Libertarian Party. Oh, for Senate. There isn't a Senate. I'm sorry. I'm sorry. I'm not sure what race he intends to run for. He intends to run for public office as a Libertarian candidate in 2016. That I know. Your Honor, I want to be clear. How could that be a relevant question? Because the only federal office would be the House of Representatives. There are no state offices. I don't think that there are any local offices that are up in 2016. I mean, would that be a relevant question? I mean, either he's a candidate for the House of Representatives, or he isn't if there aren't any other races on the ballot this fall that he could run for. I think it's a relevant question. I still think it's capable of repetition and evading review. I'd be happy to brief any mootness issue if that's something that this is going to turn on. But, again, the Sixth Circuit. I think it would be a little imprecise if he hadn't run twice for statewide office before, but he's run recently twice. I find it hard to believe he won't be seeking a position on the ballot, and he can argue that it limits his opportunity, that whether he decides to run or not may depend on this ballot ordering. I don't know. I feel all these constant challenges. Some of them just need to be settled. They need to be resolved so that people will know what the rules are. All the balls are up in the air, and they're just perpetually up in the air, and candidates are left in uncertainty and voters are left in uncertainty, and there's just an air of uncertainty surrounding everything about our electoral process. There's got to be some clarity to this. Therefore, Your Honor, if this case would be considered by the lower court after factual development, there would be that clarity. That's what all of the other courts are doing. The Sixth Circuit, again, Your Honor. The only way to achieve clarity. In 2015, Your Honor. Do you really want us to send this back? I mean, it's May. If we send this back, I suspect the Commonwealth is going to seek cert, maybe, maybe not. Are you even going to get a decision from Judge Payne of any relevance to this year's election? I hope so, Your Honor. You hope so? But, yes, we do want you to send it back. I can't control what Judge Payne is going to do. The only fair course in this case, and the course the law requires, is to send it back. Sixth Circuit, 2015. Would your client be better off if we affirmed so that you could go to the Supreme Court and maybe get an expedited order or something? No, Your Honor. If this court affirmed, it would make horrible law, to be perfectly frank. This case already is being cited. It was cited once in this same district already. It was cited in opposing a motion to dismiss in Maryland. This decision below does not comport with any of the other circuits that have considered this case. Again, it can't get any more basic than the Sixth Circuit in 2015. The effect of preferential ballot ordering on voter behavior involves questions of fact. I would just ask the court to read again the cases that we cite in brief. The Sixth Circuit lays out how difficult this question is. First of all, the impact that it can have, but how difficult it is because we have expert studies, as the court said, on both sides of the issue which lay out in detail why ballot ordering is of constitutional magnitude and why it really discriminates against minor party people who already have major burdens, notwithstanding the court's view of how difficult that burden is. As to the kind of evidence and discovery, I would commend the court's attention to the district court opinion in Hargett because it gives a very strong survey. In terms of going back, what do we do with the soft spots in the record? The fact that you seem to indicate that the burden before the district judge, that the burden was not severe, and the challenge to the signature requirement seems to have been dropped. As my colleagues have pointed out, there's a problem with the specificity of the proffer. The case, it's soft in these particulars. I don't understand how given all of these concessions and vagueness in terms of proffers, why you want to send it back. What utility would be gained by sending it back other than kicking the can down the road? Let's be specific, Your Honor. The concession as to severe burden, I wouldn't have made it. There are cases that say ballot ordering is a severe burden, is a severe burden. But even if that concession has been made, that doesn't resolve the case. Again, Sixth Circuit, Eighth Circuit, all of the district courts say, even if it's not severe, it's not this binary approach. Klingman says, we have a sliding scale. If it's not severe, they just have to justify them. But Anderson requires that they be justified and that evidence be put on to support their interests. If that's what you believe, and I respect totally the fact that you believe it, Judge Davis made an excellent point in terms of getting some clarity and settlement. You can take this up to the Supreme Court after an opinion of theirs, and you should do it sooner rather than later. And if we are wrong, we can, as always, be suitably instructed, and you will have what you want. But I don't see any value in kicking this thing down the road, having us have an emergency appeal in September. No one's asking for that, Your Honor. Well, yes, you did. You just asked for it. An emergency appeal? I didn't ask for any of that. That's what we'll get. But at any rate, do you have some concluding remarks? I really don't, Your Honor. Thank you very much. All right. Thank you. We'll come down and we'll adjourn court and come down and greet counsel. This honorable court stands adjourned until tomorrow morning. Gossie, United States, this honorable court.
judges: J. Harvie Wilkinson III, G. Steven Agee, Andre M. Davis